USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  June 29, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                      :
  JOSE ROSADO-ACHA,                                   :
                                                      :
                                  Plaintiff,          :        15 Civ. 7620 (KPF)
                                                      :
                      v.                              :        OPINION AND ORDER
                                                      :
  RED BULL GMBH, *et al.*,                            :
                                                      :
                                  Defendants.         :
                                                      :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

On April 8, 2015, Plaintiff Jose Rosado-Acha, a resident of Puerto Rico,

filed a class action complaint in the United States District Court for the District

of Puerto Rico against Defendants Red Bull GmbH ("GmbH"), Red Bull North

America, Inc. ("RBNA"), and Red Bull Distribution Company, Inc. ("RBDC").

Plaintiff proposed a class of "similarly situated consumers, in Puerto Rico, and

all U.S. Territories, seeking to redress the pervasive pattern of fraudulent,

deceptive, false and otherwise improper advertising, sales and marketing

practices that the Red Bull Defendants have engaged in and continue to engage

in with regard to their 'Red Bull' branded energy drinks."

The class description seemed familiar to this Court, and indeed it was: In

an earlier class action, filed in this District on January 16, 2013, and for which

the Court approved a settlement on May 12, 2015, a different plaintiff sued the

same defendants on behalf of a class of individuals "nationwide and in New

York" who were "seeking to redress the pervasive pattern of fraudulent,

deceptive, false and otherwise improper advertising, sales and marketing practices that the Red Bull Defendants have engaged in and continue to engage in with regard to their 'Red Bull' branded energy drinks." *See Careathers* v. *Red Bull GmbH, et al.*, No. 13 Civ. 0369 (KPF) (Dkt. #1). To a word, Plaintiff here echoed that prior complaint, only substituting his own class definition — residents of Puerto Rico and other U.S. Territories — and indicating underlying violations of Puerto Rican and Territorial consumer protection laws, rather than those of New York and other states listed in the earlier class action. Defendant RBNA[1] now seeks to dismiss Plaintiff's action on the basis of the prior final judgment and settlement. For the reasons set forth below, Defendant's motion to dismiss is granted.

## BACKGROUND[2]

At this stage in the proceedings, it is essential to understand the complex, intertwined procedural history of three related actions. Given Defendant's proffered bases of dismissal — deficiencies in process, *res judicata*, and release based on the prior class action settlement — the factual

---

[1]   As only Defendant RBNA was purportedly served, the motion to dismiss is formally filed only on its behalf. (*See generally* Def. Br.). However, as certain arguments are presented for dismissal of the case as to Defendants RBDC and GmbH, the Court may refer in its analysis, at times, to "Defendants." When the Court refers to "Defendant" in the singular, it is referring to RBNA.

[2]   As is necessary on a motion to dismiss, the facts as set forth in the Complaint ("Compl.") and Amended Complaint ("Am. Compl.") are accepted as true. For convenience, Defendant's opening brief is referred to as "Def. Br." (Dkt. #20); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #32); and Defendant's reply brief as "Def. Reply" (Dkt. #37).

underpinnings of Plaintiff's allegations ultimately are of less import than the procedural history of this case and the prior class actions.

**A.     The Parties and Claims in the Instant Litigation**

Plaintiff Jose C. Rosado-Acha ("Plaintiff" or "Rosado-Acha") is a resident of Puerto Rico who "has been purchasing and ingesting Defendants' Red Bull branded energy drinks since approximately 2002." (Am. Compl. ¶ 8). Defendant GmbH is a foreign corporation, based in Austria, which sells Red Bull-branded energy drinks in approximately 161 countries, "including the United States, the Commonwealth of Puerto Rico, and U.S. territories." (*Id.* at ¶ 9). Defendant RBNA is a California corporation, and is alleged to be a subsidiary of GmbH that is "responsible for sales and marketing of Red Bull branded energy drinks in the United States, the Commonwealth of Puerto Rico, and U.S. territories." (*Id.* at ¶ 10). Finally, Defendant RBDC is a Delaware corporation, and is alleged to be a subsidiary of RBNA and/or GmbH that distributes Red Bull-branded energy drinks. (*Id.* at ¶ 11).

In his Amended Complaint, Plaintiff contends that in marketing Red Bull energy drinks, Defendants "spend millions of dollars misleading customers about the superiority" of the product, amounting to "systematic and continuing practices of disseminating false and misleading information … intended to induce unsuspecting customers, including Plaintiff and other members of the proposed Classes, into purchasing, at a premium price, millions of dollars' worth of Red Bull energy drinks." (Am. Compl. ¶¶ 1-2). Specifically, Plaintiff alleges, Defendants cite flawed or disproved scientific studies that claim that

Red Bull (i) "[i]ncreases performance," (ii) "[i]ncreases concentration and reaction speed," (iii) "[i]mproves vigilance," (iv) "[s]timulates Metabolism," and (v) "[m]akes you feel more energetic and thus improves your overall well-being." (*Id.* at ¶¶ 12-14).   In the face of scientific studies and other press articles refuting Defendants' claims of the efficacy of Red Bull beverages, Plaintiff alleges that Defendants' marketing constitutes "deceptive practices and conduct," and further asserts that "[h]ad Plaintiff and other members of the proposed Classes been aware of the truth about Defendants' Red Bull-branded energy drinks, they would not have purchased the Red Bull-branded energy drinks, or would not have paid a premium price for the Red Bull-branded energy drinks."  (*Id.* at ¶¶ 24, 27).

**B.    The Procedural History of the Prior Consolidated Class Action**

On January 16, 2013, plaintiff Benjamin Careathers filed a class action in this District, on behalf of himself and all others similarly situated, for violations of consumer protection laws arising from Defendants' alleged "systematic practices of disseminating false and misleading information via television commercials, Internet websites and postings, blast emails, radio media, blogs, video news releases, advertisements, and [ ] packaging." (*Careathers*, Dkt. #1).[3]  Careathers filed an Amended Complaint on April 2, 2013.  (*Careathers*, Dkt. #11).

---

[3]    For clarity, references to any document filed in the *Careathers* class action will include "*Careathers*."

Separately, on February 27, 2013, plaintiffs David Wolf and Miguel Almaraz filed a class action complaint in the United States District Court for the Central District of California, on behalf of themselves and all others similarly situated, for violations of California's consumer protection laws based on very similar claims. *Wolf, et al.* v. *Red Bull GMBH, et al.*, No. 13 Civ. 8008 (KPF). (*Wolf*, Dkt. #1).[4]  On September 20, 2013, the parties to that action filed a joint stipulation seeking transfer of the case to this District, to be consolidated with the earlier-filed *Careathers* matter. (*Wolf*, Dkt. #19).  The court granted the application, and the case was transferred to this Court on November 12, 2013.  (*Wolf*, Dkt. #26).  On December 20, 2013, the *Wolf* and *Careathers* matters were consolidated (as consolidated, "*Careathers*"). (*Careathers*, Dkt. #33).

On July 31, 2014, the parties in *Careathers* moved jointly for preliminary approval of a class action settlement (*Careathers*, Dkt. #40-42); this Court preliminarily approved the settlement on September 3, 2014, finding that the terms and releases were fair, reasonable, and adequate for the Settlement Class (*Careathers*, Dkt. #45).[5]  In response to the Notice of Class Action and Proposed Settlement, multiple individuals — not including Plaintiff — filed objections to the settlement with the Court or opted out of the settlement entirely.  (*See Careathers*, Dkt. #54, 57, 69, 72-79, 81-82, 93).  On April 8,

---

[4]     As above, any document filed in the *Wolf* class action will include "*Wolf*."

[5]     Capitalized terms regarding the settlement that are used in this Opinion were defined in the *Careathers* settlement documents.

2015, the *Careathers* plaintiffs moved for final approval of the class action settlement, in advance of the Final Fairness Hearing that was scheduled for May 1, 2015.  (*Careathers*, Dkt. #61-64).

On May 1, 2015, the Court held the fairness hearing with the parties in *Careathers* and any class members (including objectors) who wished to attend. (*Careathers*, Dkt. #103).  Thereafter, on May 12, 2015, the Court issued a final judgment and order of dismissal with prejudice, in which the Court (i) retained subject matter and personal jurisdiction over the parties, including all settlement class members; (ii) approved the settlement as fair, reasonable, and adequate; and (iii) dismissed the consolidated action with prejudice as to the plaintiffs and all settlement class members, with enumerated exceptions; the Court also awarded attorneys' fees.  (*Careathers*, Dkt. #101, 102).

## C.    The Procedural History of the Instant Litigation

As noted above, on April 8, 2015 — the same date on which the *Careathers* parties moved for final approval — Plaintiff Rosado-Acha filed this action in the District of Puerto Rico.  (Dkt. #1).  Summonses were issued on April 9, 2015, but no Defendant was served until August 8, 2015, when Plaintiff ostensibly served his initial Complaint on Defendant RBNA.  (Dkt. #3, 5).[6]  However, while they had not been served with Plaintiff's Complaint, Defendants in *Careathers* submitted a letter to this Court on April 24, 2015,

---

[6]    Defendant RBNA initially disputed the sufficiency of service of the Complaint, but ultimately waived this issue.  (Reply Br. 6-7).  Notably, Plaintiff made no attempt at serving the Amended Complaint, filed August 4, 2015, on any Defendant, including RBNA.  (Dkt. #4).

alerting the Court to Plaintiff's newly filed action and informing the Court of a clarifying amendment to the Stipulation of Settlement filed on July 31, 2014. (*Careathers*, Dkt. #89). The amendment is discussed in detail below.

Following final approval, on September 3, 2015, Defendants in *Careathers* moved, in that action, to enjoin Plaintiff Rosado-Acha from prosecuting this action in Puerto Rico. (*Careathers*, Dkt. #124-126). Plaintiff filed his response in opposition on September 17, 2015 (*Careathers*, Dkt. #133), and Defendants filed reply papers on September 25, 2015 (*Careathers*, Dkt. #134-135), concluding briefing.

While the motion was being briefed, United States District Judge José A. Fusté in the District of Puerto Rico issued an Order, dated September 22, 2015, stating:

> I have learned that a class action regarding the issues presented here has been settled in the U.S. District Court for the Southern District of New York, case numbers 1:13-cv-00369 and 1:13-cv-08008 before Judge Katherine Polk Failla. The settlement reached there extends to cases across the nation including, of course, Puerto Rico.
>
> Counsel must show cause within 48 hours as to why the present case should not be transferred to the Southern District of New York in order to have the class action settlement applied to this case.

(Dkt. #18). In response, on September 22, 2015, Defendant RBNA filed motions (i) to transfer Plaintiff Rosado-Acha's suit to this Court and (ii) to dismiss his action entirely. (Dkt. #19-23). Plaintiff filed his own response to the Order to Show Cause on September 23, 2015. (Dkt. #24).

7

On September 25, 2015, Judge Fusté issued an Order transferring the case to this Court.  (Dkt. #27).  As the Order stated:

> I have spoken with my colleague Katherine Polk Failla in the U.S. District Court for the Southern District of New York regarding this matter.  We agree that in the interest of justice and for the convenience of the parties and witnesses, this matter should be transferred to the U.S. District Court for the Southern District of New York, to be handled by Judge Failla.  See Fed. R. Civ. P. 1404(a).  The current action may have been brought in the Southern District of New York, and is encompassed in the class action before Judge Failla in case numbers 1:13-cv-00369 and 1:13-cv-08008.

(Dkt. #27).  By virtue of Judge Fusté's transfer of Plaintiff's case to this Court, Defendants' motion to enjoin Plaintiff Rosado-Acha "from proceeding with his claims in Puerto Rico until such time as that action may be transferred to this Court for disposition" (*Careathers*, Dkt. #125), is now moot.

Following transfer of this case, this Court held a conference on November 4, 2015.  During the conference, Defendant RBNA indicated that it intended to pursue the previously filed motion to dismiss Plaintiff's Complaint. (Dkt. #30).  Plaintiff filed his response in opposition to the instant motion, including his Declaration, on December 9, 2015 (Dkt. #32), and Defendant filed its reply papers, accompanied by a motion to strike Plaintiff's Declaration, on December 22, 2015 (Dkt. #35-37), concluding briefing on this motion.  In the interim, on December 9, 2015, Plaintiff moved for entry of default against Defendant GmbH (Dkt. #33), which motion Defendant RBNA opposed on December 16, 2015 (Dkt. #34).  Accordingly, now before the Court are: (i) Defendant RBNA's motion to dismiss the instant action, accompanied by its

8

motion to strike the Declaration of Plaintiff Rosado-Acha; and (ii) Plaintiff's

motion for entry of default against Defendant Red Bull GmbH.

## DISCUSSION

### A.    Applicable Law

At the outset, the Court must determine which jurisdiction's law should

be applied: that of the First Circuit, where Plaintiff filed his action; that of the

Second Circuit, where the case is now pending; or that of New York State, the

underlying law of the prior class action, filed in diversity.   Ultimately, the Court

applies different jurisdictions' law to different aspects of this matter.

In its reply papers, Defendant states that "[w]hen a diversity action has

been transferred, federal courts apply the law of the transferor state....

Although Rosado does not suggest First Circuit law applies here, in an

abundance of caution, RBNA cites to Second and First Circuit law herein."

(Reply Br. 3 n.2).   However, while the end result does not change, the Court

finds the choice of law analysis to be more nuanced.   With regard to questions

of state law, as established in *Van Dusen* v. *Barrack*, 376 U.S. 612, 639 (1964),

a "transferee district court must be obligated to apply the state law that would

have been applied if there had been no change of venue.   A change of venue

under § 1404(a) generally should be, with respect to state law, but a change of

courtrooms."   However, with respect to applicable federal law, including

Defendants' arguments under Federal Rules of Civil Procedure 12(b)(4) and

12(b)(5):

> [T]he weight of well-reasoned authority supports the
> application of the substantive federal law of the

> transferee court when an action is transferred under
> § 1404(a).   Federal courts are competent to decide
> issues of federal law and should not be placed in the
> awkward position of having to apply the federal law of
> another circuit when it conflicts with their own circuit's
> interpretation.   The Court will decide the issues raised
> by Defendant's motion to dismiss in conformity with the
> law of the Second Circuit.

*Center Cadillac, Inc.* v. *Bank Leumi Trust Co. of N.Y.*, 808 F. Supp. 213, 224

(S.D.N.Y. 1992).

For claims of *res judicata*, the calculus again changes.  "For judgments in

diversity cases, federal law incorporates the rules of preclusion applied by the

State in which the rendering court sits." *Taylor* v. *Sturgell*, 553 U.S. 880, 891

n.4 (2008).  As the Supreme Court articulated in *Semtek Int'l Inc.* v. *Lockheed*

*Martin Corp.*, 531 U.S. 497, 508 (2001), "any other rule would produce the sort

of forum-shopping … and … inequitable administration of the laws that *Erie*

[*RR. Co.* v. *Tompkins*, 304 U.S. 64 (1938)] seeks to avoid, since filing in, or

removing to, federal court would be encouraged by the divergent effects that

the litigants would anticipate from likely grounds of dismissal" (internal

quotation marks and citations omitted).

Here, arguments based on *res judicata* are at the heart of Defendant's

motion; to these, the Court must apply New York State preclusion law, though

"there is no discernible difference between federal and New York law

concerning res judicata and collateral estoppel." *Marvel Characters, Inc.* v.

*Simon*, 310 F.3d 280, 286 (2d Cir. 2002); *see also Maharaj* v. *Bankamerica*

*Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("Under both New York law and federal

law, the doctrine of *res judicata*, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" (quoting *Federated Dep't Stores, Inc.* v. *Moitie*, 452 U.S. 394, 398 (1981))).

**B.    The Court Will Take Judicial Notice of Documents Filed in *Careathers* and *Wolf***

**1.    The Documents as to Which Judicial Notice Is Sought**

The Court must resolve several preliminary issues before addressing the merits of Defendant's arguments.  The first concerns the scope of the record the Court may consider.  In conjunction with its Motion to Dismiss (and, when filed, concurrent Motion to Transfer), Defendant filed a Request for Judicial Notice of a number of documents,[7] including:

(i)    The First Amended Complaint, as filed on April 1, 2013, in *Careathers* v. *Red Bull North America, Inc.*, No. 13 Civ. 369 (KPF) (S.D.N.Y.) (Russell Decl., Ex. 1);

(ii)   The Complaint, as filed on February 27, 2013, in *Wolf, et al.* v. *Red Bull GmbH, et al.*, 13 Civ. 1444 (MWF) (JCG) (C.D. Cal.) (Russell Decl., Ex. 2);

(iii)  The Memo Endorsement ordering Consolidation, as filed on December 20, 2013, in *Careathers* (Russell Decl., Ex. 3);

(iv)   The Stipulation of Settlement with Exhibits, as filed on July 14, 2014, in *Careathers* (Russell Decl., Ex. 4);

(v)    The Order Granting Preliminary Approval of Class Action Settlement, as filed on September 3, 2014, in *Careathers* (Russell Decl., Ex. 5);

---

[7]    These documents have been filed in the instant case as exhibits to the Declaration of Jason D. Russell in Support of Defendant's Motion ("Russell Decl.," Dkt. #21), and the Court will cite them according to their exhibit number in that Declaration, rather than by their docket numbers in the *Careathers* and *Wolf* cases.

(vi)     The Declaration of Lael Dowd Regarding Implementation of Notice Program, as filed on April 8, 2015, in *Careathers* (Russell Decl., Ex. 6);

(vii)    Plaintiffs' Memorandum of Law in Support of the Motion for Final Approval of Class Action Settlement, as filed on April 8, 2015, in *Careathers* (Russell Decl., Ex. 7);

(viii)   The Declaration of Jennifer M. Keogh Regarding Settlement Administration, as filed on April 8, 2015, in *Careathers* (Russell Decl., Ex. 8);

(ix)     The Final Judgment and Order of Dismissal With Prejudice as filed on May 12, 2015, in *Careathers* (Russell Decl., Ex. 9);

(x)      The original Class Action Complaint, as filed on January 16, 2013, in *Careathers* (Russell Decl., Ex. 10);

(xi)     A letter to the Court from Jason D. Russell dated April 24, 2015, and Accompanying Exhibits, as filed on April 24, 2015, in *Careathers* (Russell Decl., Ex. 11);

(xii)    A letter to the Court from Jason D. Russell dated April 29, 2015, and Accompanying Exhibits, as filed on April 29, 2015, in *Careathers* (Russell Decl., Ex. 12);

(xiii)   A letter to the Court from Jason D. Russell dated April 30, 2015, and Accompanying Exhibits, as filed on April 30, 2015, in *Careathers* (Russell Decl., Ex. 13);

(xiv)    A Notice of Amendment of Stipulation of Settlement and Exhibit, as filed on April 30, 2015, in *Careathers* (Russell Decl., Ex. 14);

(xv)     The Motion To Enjoin Jose Rosado Acha From Prosecuting A Duplicative Action In Puerto Rico And Interfering With This Court's Continuing Jurisdiction, Memorandum of Law In Support Thereof, and Affidavit of Service, as filed on September 3, 2015, in *Careathers* (Russell Decl., Ex. 15);

(xvi)    A letter to the Court from Jason D. Russell dated September 3, 2015, as filed on September 3, 2015, in *Careathers* (Russell Decl., Ex. 16);

(xvii) An Order regarding a briefing schedule for the Motion To Enjoin Jose Rosado Acha and Certificate of Service, as filed on September 4, 2015, in *Careathers* (Russell Decl., Ex. 17); and

(xviii) The transcript of this Court's May 1, 2015 Final Approval Hearing in *Careathers* (Russell Decl., Ex. 18).

## 2.    Applicable Law

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (citing *Mangiafico* v. *Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

"Additionally, matters as to which judicial notice may be taken, such as pleadings in other lawsuits and other public records may also be considered on a motion to dismiss." *Agron* v. *Douglas W. Dunham, Esq. & Assocs.*, No. 02 Civ. 10071 (LAP), 2004 WL 691682, at *2 (S.D.N.Y. Mar. 31, 2004); *see also Pani* v. *Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).").

More specifically, "[i]n the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that

13

appear in the court records of prior litigation and that relate to the case *sub judice*." *Jianjun Lou* v. *Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012); *see also Rothman* v. *Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleading in another lawsuit); *Young* v. *Selsky*, 41 F.3d 47, 50-51 (2d Cir. 1994) (taking judicial notice of defendant's testimony in a prior action).

While "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings," *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks omitted), it may also "take judicial notice of its own orders," *Ryan* v. *Cholakis*, No. 13 Civ. 1451 (GTS) (ATB), 2014 WL 803776, at *4 n.3 (N.D.N.Y. Feb. 25, 2014), and "its own records," *Hatch* v. *Morosco Holding Co.*, 56 F.2d 640, 640 (S.D.N.Y. 1932); *see also United States* v. *Currency in Total Amount of 2,223.40*, 157 F. Supp. 300, 303 (N.D.N.Y. 1957) ("[T]here seems to be no doubt as to the power of the court to take judicial notice of its own records in the same or in an interrelated case."). "In particular, [a court] can affirm the dismissal of a complaint for failure to state a claim based on the affirmative defense of res judicata if 'all relevant facts are shown by the court's own records,' of which [the court] can take judicial

notice." *AmBase Corp.* v. *City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (citing *Day* v. *Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)).[8]

### 3.     Analysis

Given the interrelated nature of *Careathers* and the instant matter, Defendants are correct that the Court may take judicial notice of the above-listed documents.  Although these documents were neither attached to nor incorporated by reference in Plaintiff's Complaint or Amended Complaint, they constitute "pleadings in other lawsuits and other public records," *Agron*, 2004 WL 691682, at *2, and "related documents that appear in the court records of prior litigation and that relate to the case *sub judice*," *Jian Jun Lou*, 872 F. Supp. 2d at 350 n.6.  Still more, a large number of these documents encompass the Court's "own orders," *Ryan*, 2014 WL 803776, at *4 n.3, or the Court's "own records in the same or in an interrelated case," *Currency in Total Amount of 2,223.40*, 157 F. Supp. at 303.  Accordingly, Defendants' request for judicial notice of the above-listed documents is hereby granted.

## C.     The Court Grants Defendant RBNA's Motion to Strike Plaintiff's Declaration

Separately, the Court considers Defendant RBNA's Motion to Strike the Declaration of Jose C. Rosado-Acha ("Mot. to Strike"), filed as an exhibit to Plaintiff's opposition to Defendant's motion to dismiss.  (Dkt. #35-36).  In his Declaration, Plaintiff stated that (i) his PACER records show he did not review

---

[8]     Judicial notice may be taken of such documents in order to show their contents, and not to prove the truth of matters asserted therein.  *See generally Lopes* v. *Riendeau*, No. CV 14-10679-NMG, 2016 WL 1290349, at *25 n.24 (D. Mass. Mar. 30, 2016) (collecting cases).

the *Careathers* docket between April 6, 2015, and September 21, 2015, as he expected any document filed in *Careathers* would be noticed in his District of Puerto Rico case; (ii) he received no notice of the motion for preliminary settlement approval, the amendment to the Stipulation of Settlement, or the Court's fairness hearing; (iii) he did not review a transcript of the fairness hearing until it was appended as an exhibit to Defendants' motion to enjoin the instant matter; and (iv) delayed service of process in the instant case was "not for the purposes of prejudicing [Defendants] or gaining any unfair advantage," but rather "to coordinate the service of process with another unrelated class action that was due to be served in California." (*See generally* Dkt. #32-1 ("Rosado-Acha Decl.")).

Defendant contends that Plaintiff's Declaration (i) "consists entirely of brand-new factual allegations not made or even referenced in either of his complaints, which are not appropriate for consideration on a motion to dismiss as a matter of law," and (ii) "lacks credibility and is irrelevant to the issues before this Court." (Mot. to Strike 2). The Court need only consider Defendant's first argument — that Plaintiff's Declaration presents new factual allegations not contained in his Complaint or Amended Complaint — to grant Defendant's motion.

As Defendant points out, "none of the 'facts' contained in the Declaration appear anywhere in Plaintiff's original or amended complaint, because Plaintiff made little attempt to modify the allegations he lifted from the complaint filed in *Careathers* in April 2013." (Mot. to Strike 2). The Second Circuit has held

16

that in evaluating a motion to dismiss, "review is generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Can.), Ltd.* v. *Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see also Wachtel* v. *Nat'l R.R. Passenger Corp.*, No. 11 Civ. 613 (PAC), 2012 WL 292352, at *2 (S.D.N.Y. Jan. 30, 2012) ("While Plaintiff attached an affidavit to his opposition brief in an attempt to support his argument, the Court cannot consider affidavits in ruling on a motion to dismiss."). Accordingly, the Court will not consider Plaintiff's Declaration in evaluating the instant motion to dismiss.

In any event, even if considered, Plaintiff's Declaration would not provide additional support for his claims. As Defendant notes, while Plaintiff attests that he received no notice of the preliminary settlement approval or fairness hearing in *Careathers*, both of these events were noticed on the *Careathers* docket prior to the date when Plaintiff allegedly ceased reviewing that docket. (Mot. to Strike 4). Specifically, the Court granted preliminary approval of the *Careathers* settlement on September 3, 2014 (*Careathers*, Dkt. #45), and set the date of the Final Fairness Hearing in the same Order. That Plaintiff did not review the *Careathers* docket between April 6, 2015, and September 21, 2015, thus provides no support for his contention that he had no notice of these events.

Moreover, as Defendant notes, while Plaintiff allegedly "expected that anything filed in connection with [*Careathers*] would be properly notified

17

through the Court's ECF" in his own action, he has nonetheless been represented by counsel throughout this action who could have monitored the filings in the previously filed, identical actions on which Plaintiff modeled his Complaint. (*See* Mot. to Strike 4-5; *see also* Dkt. #1 (Compl. filed on April 8, 2015, by counsel Manuel Morales-Schmidt); #4 (Am. Compl. filed on August 4, 2015, by counsel Jose Franco-Rivera); #17 (Mot. of Manuel Morales-Schmidt to withdraw as counsel, filed September 3, 2015)). More to the point, Plaintiff's assertion makes no sense unless he believed that his case was related to the *Careathers* action, and indeed it was. Accordingly, the Court would not be persuaded by Plaintiff's purported personal failure to monitor the docket in *Careathers*.

Finally, while Plaintiff now contends that service of process in this matter was delayed "to coordinate the service of process with another unrelated class action that was due to be served in California" (Rosado-Acha Decl. ¶ 8), this does not bolster his claim of proper service on Defendant RBNA. Defendant disputed proper service on the ground of the individual served, rather than the timing of service (Def. Br. 13-14), and Plaintiff provides no additional information supporting his contention that service was proper. Nonetheless, because, as noted below, Defendant RBNA now waives arguments based on improper service, the Court need not evaluate this last point any further. Accordingly, Plaintiff's Declaration is struck in its entirety, though it would fail to provide support for Plaintiff's opposition even if considered.

**D.      The Court Will Dismiss Plaintiff's Complaint as to All Defendants**

**1.      The Court Denies as Moot Defendant RBNA's Motion to Dismiss Under Rule 12(b)(1)**

The Court now considers the merits of Defendant RBNA's arguments for dismissal.  For starters, the Court can swiftly resolve Defendant's claim for lack of subject matter jurisdiction under Rule 12(b)(1): The claim is moot. Defendant had argued in its opening papers that the District of Puerto Rico's subject matter jurisdiction "was divested by the Southern District of New York's retention of continuing, exclusive jurisdiction over the administration and enforcement of the Settlement, including enforcement of the court-ordered permanent injunction against all Class members." (Def. Br. 3).  In light of Judge Fusté's Order transferring the matter, the matter is resolved.

**2.      The Court Dismisses the Complaint as to Defendants RBDC and GmbH Pursuant to Rules 12(b)(4) and 12(b)(5)**

**a.      Applicable Law**

Federal Rule of Civil Procedure 12(b)(4) governs the defense of insufficient process, whereas Rule 12(b)(5) governs insufficient service of process.  "Objections to sufficiency of process under Fed. R. Civ. P. 12(b)(4) must identify substantive deficiencies in the summons, complaint or accompanying documentation." *Gianatasio* v. *D'Agostino*, No. 11 Civ. 3095 (RWS), 2011 WL 5244961, at *2 (S.D.N.Y. Nov. 2, 2011).  "A Rule 12(b)(4) motion is proper only to challenge noncompliance with the provision of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals

specifically with the content of the summons." *Id.* (internal quotation marks omitted).

Separately, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd.* v. *Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Under Rule 12(b)(5), "[o]nce a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." *Darden* v. *DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). "When a court considers a motion to dismiss pursuant to Rule 12(b)(5), it must consider information outside the complaint to determine whether service was sufficient." *Hernandez* v. *Mauzone Home Kosher Prods. of Queens, Inc.*, No. 12 Civ. 2327 (SJ) (JMA), 2013 WL 5460196, at *4 (E.D.N.Y. Sept. 30, 2013).

Further, under Federal Rule of Civil Procedure 4(m), prior to its December 2015 amendment, a plaintiff was required to serve a defendant with a summons and a copy of the complaint within 120 days after the complaint was filed. If "a defendant ha[d] not been served with the original complaint, service of an amended complaint within 120 days of filing suit … satisf[ied] Rule 4(m)." *Bakal* v. *Ambassador Constr.*, No. 94 Civ. 584 (JSM), 1995 WL 447784, at *2 (S.D.N.Y. July 28, 1995).

### b.    Analysis

Defendant RBNA initially argued that it was not properly served under Rules 12(b)(4) and 12(b)(5), because Plaintiff served the initial Complaint on

RBNA's Building Operations Supervisor, who "is *not* designated to accept service of process." (Def. Br. 14 (emphasis in original)). In its reply papers, though, RBNA indicates that "in the interest of efficiency and expediency in resolving this action on the merits," it will waive these grounds for dismissal. (Def. Reply 7). Curiously, however, RBNA persists in this motion to dismiss on behalf of Defendants RBDC and GmbH, noting that those Defendants have not waived their objections. (Def. Br. 14-16). The Court does not believe that RBNA has standing to make such motions, and that the proper course of action would have been for either or both of those Defendants to enter a limited purpose appearance to contest service. *See, e.g.*, *Zhang* v. *Baidu.com Inc.*, 932 F. Supp. 2d 561, 563 (S.D.N.Y. 2013).

Under Rule 4(m), the Court has the ability to consider the issue of service *sua sponte*, so long as Plaintiff is given notice. Fed. R. Civ. P. 4(m) ("If a defendant is not served within [120] days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). Plaintiff was given such notice by Order of the Court dated June 16, 2016 (Dkt. #38), but he elected not to file any supplemental response within the time allotted by the Court. Accordingly, the Court has considered his arguments made in response to RBNA's motion.

The docket for this case shows that summonses were issued as to RBNA, GmbH, and RBDC (Dkt. #3), but that service was attempted only on RBNA (Dkt. #5). Plaintiff does not dispute this fact, but rather contends in his

Opposition that Defendant GmbH has waived these defenses by appearing in

the matter, which contention is refuted by the docket.  Plaintiff also argues

that:

> Red Bull of North America and Red Bull GMBH
> continued to participate in the litigation of this case as
> follows:  [i] Defendants secured the services of local
> counsel in Puerto Rico who filed a motion for an
> extension of time to answer the complaint on behalf of
> **Red Bull North America** but failed to adequately make
> an assertion of insufficient service of process … ;
> [ii] Hillary Hamilton, Ang[ela] Colt, Jordan [Feirman],
> and Jason Russel[l], all filed general *pro hac vice*
> appearances on behalf of Red Bull North America *and
> Red Bull GMBH* … ; [iii] Red Bull of North America filed
> a motion to transfer the case …; [iv] Defendants Red
> Bull of North America and Red Bull GMBH did not
> object to and participated in the recent hearing in this
> Court held December 4, 2015 regarding the merits of
> this action.

(Pl. Opp. 5-6 (emphases in original)).[9]

These arguments for Defendant GmbH's waiver of these defenses fall

short.  As Defendants point out, "'[a] party can file a general appearance and

object to personal jurisdiction or venue at any time before the answer is filed or

in the answer' without waiving its Rule 12 jurisdictional defenses, including

defective service of process."  (Def. Reply 7 (citing *Grammenos* v. *Lemos*, 457

F.2d 1067, 1070 (2d Cir. 1972)).  *See also Zherka* v. *Ryan*, 52 F. Supp. 3d 571,

577 (S.D.N.Y. 2014) ("Merely making a general appearance before the court will

---

[9]     Presumably because the notices of appearance of non-Puerto Rican counsel were filed
on behalf of RBNA and GmbH only, Plaintiff makes no comparable argument regarding
RBDC's waiver of insufficient process or insufficient service of process.

not constitute a waiver of the defense [of insufficient service of process] so long as the party makes a timely challenge to the court's jurisdiction.").

More importantly, as Defendant observes, "the request for extension of time and motions to transfer and dismiss were all filed *solely* by RBNA." (Def. Reply 7-8 (emphasis in original)). Reviewing the docket of this case, the Court confirms that the motion for an extension of time to answer, the motion to transfer, and the motion to dismiss were indeed filed solely on behalf of Defendant RBNA. (*See* Dkt. #6, 19, 20). Still more, under Rule 4(m), the time has long since passed during which Plaintiff could effect service on these Defendants. For all of these reasons, the Complaint is dismissed as to Defendants GmbH and RBDC.

### 3. The Court Grants Defendant RBNA's Motion to Dismiss Under Rule 12(b)(6)

#### a. The Standard of Review

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

### b.   Plaintiff's Complaint Is Barred by *Res Judicata*

#### i.   Applicable Law

##### (a)   *Res Judicata* Generally

Issues of *res judicata* and collateral estoppel may be decided on a motion to dismiss. *See, e.g.*, *Cameron* v. *Church*, 253 F. Supp. 2d 611, 617-24 (S.D.N.Y. 2003). Under the doctrine of *res judicata*, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Moitie*, 452 U.S. at 398. As the Supreme Court has more fully explained:

> [U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation. Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply. A judgment in favor of the plaintiff class extinguishes their claim, which merges into the judgment granting relief.... A judgment in favor of

> either side is conclusive in a subsequent action
> between them on any issue actually litigated and
> determined, if its determination was essential to that
> judgment.

*Cooper* v. *Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984).

"Under both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Maharaj*, 128 F.3d at 97 (quoting *Moitie*, 452 U.S. at 398). "New York takes a transactional approach to *res judicata*: 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Yeiser* v. *GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008) (quoting *Sosa* v. *J.P. Morgan Chase Bank*, 822 N.Y.S.2d 122, 124 (2d Dep't 2006)). "Simply put, the doctrine states that once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning 'the transaction, or series of connected transactions, out of which the [first] action arose.'" *Maharaj*, 128 F.3d at 97 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)).

With regard to the first requirement for *res judicata*, a final judgment on the merits, "[i]t is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes." *Marvel Characters, Inc.*, 310 F.3d at 287. "Such a dismissal constitutes a final

judgment with the preclusive effect of *res judicata* not only as to all matters
litigated and decided by it, but as to all relevant issues which could have been
but were not raised and litigated in the suit." *Nemaizer* v. *Baker*, 793 F.2d 58,
61 (2d Cir. 1986) (internal quotation marks omitted).

Proceeding to the requirement that the prior and current actions involve
the same parties or their privies, courts evaluating New York law have
indicated that "[p]rivity between two parties fulfills the doctrine's requirement
of identity of parties," and "identity of parties encompasses all individuals
whose interests were represented adequately in prior litigation by another with
the authority of representation." *G & T Terminal Packaging Co., Inc.* v. *Consol.
Rail Corp.*, 719 F. Supp. 153, 158 (S.D.N.Y. 1989); *see also Ferris* v. *Cuevas*,
118 F.3d 122, 126 (2d Cir. 1997) (privity "includes … those who control an
action although not formal parties to it, [and] those whose interests are
represented by a party to the action" (quoting *Watts* v. *Swiss Bank Corp.*, 27
N.Y. 2d 270, 277 (1970))); *Chase Manhattan Bank, N.A.* v. *Celotex Corp.*, 56
F.3d 343, 346 (2d Cir. 1995) ("Under New York and federal law … concepts
summarized by the term privity are looked to as a means of determining
whether the interests of the party against whom claim preclusion is asserted
were represented in prior litigation.").  And, as the Supreme Court has stated,
"in certain limited circumstances, a nonparty may be bound by a judgment
because she was adequately represented by someone with the same interests
who was a party to the suit.  Representative suits with preclusive effect on

nonparties include properly conducted class actions." *Taylor*, 553 U.S. at 894 (internal quotation marks, citations, and alterations omitted).

Finally, "[i]n order for the second action to involve the same transaction as the first, the second action must require the same evidence to support it based on facts that were also present in the first action." *Modular Devices, Inc.* v. *Alcatel Alenia Space Espana*, No. 08 Civ. 1441 (JS) (WDW), 2010 WL 3236779, at *5 (E.D.N.Y. Aug. 12, 2010); *see generally Theatre Row Phase II Assocs.* v. *H & I Inc.*, 443 B.R. 592, 598-99 (S.D.N.Y. 2011) (collecting cases). "In determining what constitutes the same transaction, the court should look to:  how the facts are related in time, space, origin or motivation; whether they form a convenient trial unit; and whether treating them as a unit conforms to the parties' expectations." *Yeiser* v. *GMAC Mortg. Corp.*, 535 F. Supp. 2d at 422.  "Even if there are variations in the facts alleged or different relief is sought, if the actions are grounded on the same gravamen of the wrong *res judicata* applies." *Id.*; *cf. Peters* v. *Timespan Commc'ns, Inc.*, No. 97 Civ. 8750 (DC), 2000 WL 340900, at *6 (S.D.N.Y. Mar. 30, 2000) ("In light of the near-verbatim duplication of factual assertions, there can be no question that the federal action arises from the same factual grouping....  [T]he fact that plaintiffs' federal claims are brought under different legal theories and seek different relief than [ ] previously asserted claims ... does not preclude the application of res judicata in this case.")

In short, "[t]he purpose of the doctrine is to bar 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has

entered a final judgment on the merits.'" *Russo* v. *Estee Lauder Corp.*, 856 F. Supp. 2d 437, 458 (E.D.N.Y. 2012) (quoting *Comm'r of Internal Revenue* v. *Sunnen*, 333 U.S. 591, 597 (1948)).

### (b)     *Res Judicata* in Class Actions

Additional due process considerations inhere in *res judicata* arguments raised in connection with class actions.  As an initial matter, "[t]here is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper*, 467 U.S. at 874.  Nonetheless, "[i]n the context of a class action predominantly for money damages [the Supreme Court has] held that absence of notice and opt-out violates due process." *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 363 (2011); *see also Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 812 (1985) (due process for class action plaintiffs requires "notice plus an opportunity to be heard and participate in the litigation").

"To alert class members to their right to 'opt out' of a (b)(3) class, Rule 23 instructs the court to 'direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 617 (1997) (citing Fed. R. Civ. P. 23(c)(2)).  "To comport with due process, the notice provided to absent class members must be 'the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections.'"  *Hecht* v. *United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012) (citing *Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 812 (1985)).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores, Inc.* v. *Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005).

> ii.  **Discussion**
>
> > (a)  **The Court's Determinations in *Careathers* That Plaintiff's Proposed Class Was Included in the *Careathers* Class and Received Due Process Are Controlling**

The Court first considers the *res judicata* requirement, as a matter of constitutional law, that absent class members in a class action receive due process in order to be bound by a final judgment in such an action.  In his opposition to Defendant's motion, Plaintiff claims that *res judicata* is inapplicable "because the amended notice encompassing the Puerto Rico consumers within the New York based class definition in *Careathers* was obtained without notice and due process of law, and therefore deprived the Puerto Rico class of 'its right to a full and fair hearing.'"  (Pl. Opp. 1).  While Defendant argues that neither Plaintiff's Complaint nor his Amended Complaint alleged that Puerto Rican and Territorial consumers failed to receive notice of the *Careathers* settlement (Def. Br. 20), the Court nonetheless addresses these due process concerns.

As background, in the *Careathers* parties' Stipulation of Settlement, filed
July 31, 2014, the Settlement Class was defined as "all persons who purchased
Red Bull Products in the United States during the Class Period." (Russell
Decl., Ex. 4). In the wake of Plaintiff Rosado-Acha's Complaint being filed
(although, as noted, not served upon Defendants at that time), the *Careathers*
parties contacted the Court regarding a clarifying amendment to the
Stipulation of Settlement. (Russell Decl., Ex. 11). On April 30, 2015, the
parties filed the Amended Stipulation of Settlement (Russell Decl., Ex. 14),
defining "United States" as "all fifty States, the District of Columbia, the
Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa,
and the other territories and possessions of the United States." Plaintiff
disputes that, prior to this amendment, the Settlement Class included
residents of Puerto Rico and U.S. Territories, contending that they did not
receive adequate notice of the Settlement. (Pl. Opp. 3). Defendant contests
this, claiming that residents of Puerto Rico and the U.S. Territories were
included throughout and received due process under the law. (Def. Br. 20-21).

Due process requires (i) provision of notice "reasonably calculated, under
all the circumstances, to apprise interested parties of the pendency of the
action and afford them an opportunity to present their objections," and
(ii) "that an absent plaintiff be provided with an opportunity to remove himself
from the class by executing and returning an 'opt out' or 'request for exclusion'
form to the court." *Phillips Petroleum Co.*, 472 U.S. at 812. Plaintiff
acknowledges that "[i]n a class action, for example, a person not named as a

party may be bound by a judgment on the merits of the action, if she was adequately represented by a party who actively participated in the litigation" (Pl. Opp. 2), but he then states that "the Puerto Rico consumers received no notice at all and were therefore deprived of their rights to a full and fair opportunity to litigate their claims" (*id.* at 3).  In a footnote, Plaintiff adds:

> Red Bull attempts to make much of its alleged "*extensive*" efforts to have its settlement notice reach Puerto Rico consumers.   However, Red Bull conveniently loses sight of the fact that the amended notice i.e., the one with references to Puerto Rico[,] U.S. Virgin Islands, and other U.S. Territories, was never published even despite the Court's due process concerns.

(*Id.* at 3 n.1 (emphasis in original)).

This precise issue has already been judicially determined by this Court in Defendant's favor.  At the Final Fairness Hearing in *Careathers*, the Court considered documentary submissions from the parties (*see* Russell Decl., Ex. 6, 8, 11-13), and heard from both plaintiffs' counsel and defendants' counsel, to confirm that (i) the parties had intended to include Puerto Rico and the U.S. Territories in the Class Definition at all times, before and after the filing of Plaintiff's suit; (ii) their Notice Program was reasonably calculated to reach residents of those locations; and (iii) they did, in fact, provide notice to those individuals.  (Russell Decl., Ex. 18 at 51-69).  The parties further discussed and distinguished *In re Airline Ticket Commission Antitrust Litigation*, 268 F.3d 619 (8th Cir. 2001) — one of the few cases on this issue, and a case that was raised by Plaintiff in his opposition to the now-moot transfer motion, but not in

his opposition to the instant motion — and the Court determined that case to

be inapposite.  (*Id.* at 56-57).

For the sake of thoroughness, the Court's findings as to the Class

Definition and Notice procedures are reiterated in their entirety:

> There is a related issue here that I talked about with the
> parties and that is what was the notice and who was
> defined in the class.  And I was surprised, as I think
> everybody was, by the filing of the lawsuit in Puerto
> Rico, and it caused me to go back and look at the notice
> and it caused me to — I won't say burden, I will
> say — impose on counsel for both sides to provide
> documentation to me regarding the notice.  And, once
> again, the standard is did it reasonably apprise and I
> have to say that it did.  The parties clearly understood
> that the class was the class of folks in the United States
> and its territories and commonwealths.  That is obvious
> from the stipulation that was signed in the last day or
> so.   It is more obvious from the contemporaneous
> conduct.  I give special mention here to the discussions
> that were had with [claims administrator] the Garden
> City Group which I now understand were made to
> devise a program that went to the United States and its
> territories, but in saying that I don't mean to suggest
> that when we use the term United States it didn't
> include that.   Everybody understood that it was to
> include the 50 states, the District of Columbia, the
> territories, possessions and commonwealth of the
> United States.  And so, the question was [if] the parties
> understood that.  Did the prospective class members
> understand that and I believe they do.
>
> On the issue of Puerto Rico, there were more than 200
> media outlets in Puerto Rico alone [that reported the
> notice] so there can be really no credible assertion that
> folks in Puerto Rico did not understand that this applied
> to them.  But I think the listing of media outlets that
> was provided to me by the parties in anticipation of this
> proceeding confirms as well that there were efforts made
> to reach everyone in every territory and that was not
> only done by efforts to reach local media to the extent it
> existed and was practicable, but also to have internet
> sites that were accessible worldwide.   And once

accessed, there was nothing in the paperwork — I use that term loosely — nothing in the [notices to prospective class members] that suggests that it was excluding anybody that was not in the 50 states and the District of Columbia.

To the contrary, the ads spoke only of the time period. When you got to the website and read the long form notice it said United States. There was nothing to suggest that United States was defined in a way to exclude folks. And, indeed, once you clicked on the claim form to ascertain your eligibility, this was a dropdown menu that made clear that you were eligible [as a resident of Puerto Rico or the U.S. Territories].

I also don't want to forget the fact that I have nearly 3,000 claimants from those territories. So, obviously, they knew about it and thought about it. We had discussions about the appropriateness of a second notice period and one can do many things but really the issue is what should we do based on the law? The law is reasonably apprise and I am confident that the class members here, throughout the United States defined broadly as I have just described, were aware of it. So, I don't think there was a need for a second notice period and I appreciate the arguments of the parties in agreeing with that proposition.

So, I accept the stipulation. I was concerned for a moment about the notice but now delving into it, looking at all of the backup documentation, hearing from the parties, hearing about the work done by the Garden City Group, I am quite confident that the notice was and was reasonably calculated to have that broad reach.

(Russell Decl., Ex. 18 at 127-30).

Thus, the Court found explicitly that individuals residing in Puerto Rico and the U.S. Territories were included in the Settlement Class, which determination was incorporated into the Final Judgment in the form of the "United States" class definition; accordingly, those individuals, adequately

33

represented by Class Counsel, were in privity with the previous Settlement

Class.  (Russell Decl., Ex. 9).  "[A]s to the parties in a litigation and those in

privity with them, a judgment on the merits by a court of competent

jurisdiction is conclusive of the issues of fact and questions of law necessarily

decided therein in any subsequent action."  *Gramatan Home Investors Corp.* v.

*Lopez*, 46 N.Y.2d 481, 485 (1979).  Because the Court necessarily evaluated the

geographic scope of the parties' Class Definition in order to accept the

Amended Stipulation and issue a Final Judgment, this determined issue falls

within the scope of *res judicata.*  Accordingly, Plaintiff must not now be

permitted to reopen this determination, expending significant judicial resources

to relitigate this Court's own finding that Plaintiff was a member of the

Settlement Class and that he and other residents of Puerto Rico and the U.S.

Territories received due process in the prior action.[10]

> **(b)    The *Careathers* Settlement Constituted a
> Final Judgment on the Merits**

As noted above, under New York law, "a valid final judgment bars future

actions between the same parties on the same cause of action," *Yeiser*, 535 F.

---

[10]    Defendant has suggested to the Court that the timing of Plaintiff's Complaint smacks of
gamesmanship, inasmuch as its filing was designed to limit the ability of the parties to
the *Careathers* litigation to address the definition of the Settlement Class in their
briefing in support of the motion to approve the class settlement.  The Court notes that,
if this were true, any such stratagem failed: Upon learning of the duplicative litigation,
the parties were able to present to the Court evidence at the final fairness hearing that
made plain that the plaintiffs in *Careathers* had intended to bring an action on behalf
of — and that both sides had intended to settle the action on behalf of — a nationwide
class that necessarily included residents of U.S. territories.  In other words, to the
extent Plaintiff deliberately absented himself from the *Careathers* fairness hearing for
strategic reasons, any arguments he intended to make regarding the due process
afforded residents of U.S. territories were fully considered by the Court in arriving at its
decision to certify a class for settlement purposes that included these residents.

Supp. 2d at 421 (internal quotation marks omitted), and "a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes," *Marvel Characters, Inc.*, 310 F.3d at 287.  The parties do not dispute that final approval of the settlement agreement in *Careathers* constituted a final judgment on the merits.  In its "Final Judgment and Order of Dismissal with Prejudice" in *Careathers*, this Court found that "the entire Settlement [was], in all respects, fair, reasonable and adequate," and that "the Settlement was entered into in good faith following arm's-length negotiations and [was] not collusive." (*Careathers*, Dkt. #101).  Accordingly, the Court dismissed with prejudice the consolidated actions, with enumerated exceptions.  (*Id.*).  Therefore, the Court now identifies no challenge to its finding of a "valid final judgment" in that prior action.

### (c)  Plaintiff Is in Privity with the *Careathers* Plaintiffs

Next, the Court finds "privity" exists between the plaintiffs in the consolidated *Careathers* action and Plaintiff in the instant action, as Plaintiff Rosado-Acha's "interests [were] represented by a party to" *Careathers*.  *See Ferris*, 118 F.3d at 126.  Considering the identity of Plaintiff's own claims and demands — almost word-for-word duplications of *Careathers* — in conjunction with the Court's prior determination that Plaintiff was a member of the *Careathers* class, the Court identifies no ground on which the Court could now find that Plaintiff's interests were not aligned with those of the earlier Class.  Given that Plaintiff's precise claims were litigated and decided in that earlier

35

matter, Plaintiff would be hard-pressed to contend that the plaintiffs and counsel to that action had divergent incentives.

In his brief rebuttal to Defendant's *res judicata* defense, Plaintiff cites *Taylor*, 553 U.S. at 892, for the proposition that "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit."  Plaintiff claims that "without the impermissible amendment" to the Stipulation of Settlement, "there is no identity of parties between the class in *Careath[ers]* and the Puerto Rico consumers sufficient to overcome the doctrine against nonparty preclusion." (Pl. Opp. 1).  Plaintiff then states that "the claims [in *Careathers*], even if factually similar, were made by different parties, who were not the representatives of Puerto Rico Consumers."  (*Id.* at 2).

This constitutes the entirety of Plaintiff's opposition to Defendant's claim of privity, and it does not suffice.  As noted, the very case cited by Plaintiff indicates that "[r]epresentative suits with preclusive effect on nonparties include properly conducted class actions."  *Taylor*, 553 U.S. at 894.  This Court found at the Final Fairness Hearing that the *Careathers* class action settlement was "fair, reasonable and adequate," was "entered into in good faith following arm's-length negotiations," and was "not collusive."  (*Careathers*, Dkt. #101). Furthermore, as stated above, the Court previously determined that the "Puerto Rico consumers" Plaintiff references received due process and were indeed members of the Settlement Class, which decision was one aspect of the Court's final judgment in *Careathers*.  Accordingly, Plaintiff's interests were adequately

36

represented in that properly conducted class action, and his action, for *res judicata* purposes, is found to be "between the same parties."

> ### (d)   *Careathers* Involved the Same Transaction or Series of Transactions

Along similar lines, it is plainly incorrect for Plaintiff to claim that the instant matter does not involve the same transaction or transactions as the *Careathers* matter, where "the second action must require the same evidence to support it based on facts that were also present in the first action." *See Modular Devices, Inc.*, 2010 WL 3236779, at *5. Again, as Defendant correctly points out, Plaintiff's "copycat lawsuit necessarily arises out of the same nucleus of operative facts (*e.g.*, Red Bull's alleged marketing claims concerning purported functional benefits) and seeks to redress the same alleged wrongs (*e.g.*, deceptive marketing to induce customers to pay an unwarranted 'premium')." (Def. Br. 18).

And while Plaintiff contends, in opposition, that "the claims made here are based on Puerto Rico laws that are different from the multi-state consumer laws in the Careathers class action complaint" (Pl. Opp. 3), this is of no moment. As made clear in *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), under New York law, *res judicata* "bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Given that Plaintiff's action is premised on identical factual allegations, his citation in the

Amended Complaint to Puerto Rican consumer protection statutes cannot save him from the application of *res judicata*.

Plaintiff's challenges to Defendant's assertion of *res judicata* do not hold water, and, accordingly, his action is dismissed as to Defendant RBNA under Federal Rule of Civil Procedure 12(b)(6).

### b.   Plaintiff's Complaint Is Barred by the Doctrine of Release

#### i.   Applicable Law

Similarly, Defendants assert that Plaintiff's claims were "expressly and unambiguously" released by virtue of the final judgment in the prior class action. (Def. Br. 21-22). "[T]he defense that a claim is barred by a contractual release may be asserted on a Rule 12(b)(6) motion, and where the language of the release is unambiguous, dismissal is proper." *Twine* v. *Four Unknown N.Y. Police Officers*, No. 10 Civ. 6622 (DAB) (JLC), 2012 WL 6184014, at *6 (S.D.N.Y. Dec. 12, 2012), *report and recommendation adopted*, 2013 WL 314447 (S.D.N.Y. Jan. 25, 2013).

"A release is a type of contract governed by principles of contract law. In determining the scope and validity of a release, courts should apply state law, and there is no dispute that New York law applies to the interpretation of the Settlement Agreement." *Consol. Edison, Inc.* v. *Northeast Utilities*, 332 F. Supp. 2d 639, 646 (S.D.N.Y. 2004), *rev'd in part on other grounds*, 426 F.3d 524 (2d Cir. 2005) (internal citations omitted). "Courts applying New York law will enforce valid releases that are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not the product of fraud,

duress, or undue influence." *Hummel* v. *AstraZeneca LP*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).  Under New York law, courts must "discern the intent of the parties to the extent their intent is evidenced by their written agreement." *Commander Oil Corp.* v. *Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir. 1993) (internal quotation marks omitted).  "Where a release is unambiguous, it must be enforced according to its terms without resort to extrinsic evidence." *Consol. Edison, Inc.*, 332 F. Supp. 2d at 647.

"Class action releases may include claims not presented in the complaint and even those which could not have been presented so long as the released conduct arises out of the identical factual predicate as the settled conduct." *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 118-19 (S.D.N.Y. 2010) (internal quotation marks and alterations omitted).  Thus, "[a] class action settlement may 'prevent class members from subsequently asserting claims relying on a legal theory different from that relied on in the class action complaint, but depending on the very same set of facts." *Id.* at 119 (quoting *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 2495554, at *3 (S.D.N.Y. Oct. 11, 2005)).  "This rule of law serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *In re Currency Conversion*, 264 F.R.D. at 119 (internal quotation marks omitted).

### ii.    Analysis

Dismissal of the Complaint as to RBNA is similarly warranted under Rule 12(b)(6) in accordance with the doctrine of release, as Plaintiff's claims in the instant action were "expressly and unambiguously released" by the *Careathers* final judgment and, as discussed above, Plaintiff Rosado-Acha and residents of Puerto Rico and the U.S. Territories were members of that Settlement Class.

As the Release in the *Careathers* Amended Stipulation of Settlement recites, in its entirety:

> "Released Claims" means any and all actions, claims, demands, rights, suits, and causes of action of any kind or nature whatsoever against the Released Persons [including Defendants], including damages, costs, expenses, penalties, and attorneys' fees, whether at law or equity, known or unknown, foreseen or unforeseen, developed or undeveloped, direct, indirect or consequential, liquidated or unliquidated, arising under common law, regulatory law, statutory law, or otherwise, based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or Settlement Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the Released Persons in any other court, tribunal, arbitration panel, commission, agency or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from or in any way whatsoever relating to the consumption, actions or omissions in manufacturing, advertising, marketing, labeling, packaging, promotion, sale and distribution of the Products, and/or any claims or omissions regarding any purported benefits, superiority, safety or qualities of the Products or their ingredients, or consumers' experiences relating to the consumption of the Products, from January 1, 2002 to the Effective Date, including those which have been asserted or which could reasonably have been asserted

> by the Class against the Defendants in either of these
> Actions or any other threatened or pending litigation
> asserting claims of the nature encompassed by this
> Release, and any claims arising after the date of final
> approval which could be asserted based on labels or
> Marketing in existence as of the date of final approval of
> the Stipulation.

(Russell Decl., Ex. 14).  This Release bars, unambiguously, any future claims

against Defendants, in any court and based on any law, relating to the

manufacturing, advertising, marketing, labeling, packaging, promotion, sale, or

distribution of Red Bull products.

To be released, claims need only "arise[] out of the identical factual

predicate as the settled conduct."  *In re Currency Conversion*, 264 F.R.D. at

118-19 (internal quotation marks omitted).  Plaintiff's assertions factually

mirror those of *Careathers*, and while Plaintiff cites Puerto Rican and Territorial

statutory law, his suit nonetheless falls squarely within the provisions of this

Release.  As the Release encompasses all claims "which have been asserted or

which could reasonably have been asserted by the Class," and because Plaintiff

was deemed a member of that Settlement Class, the Court finds that his claims

have been unequivocally released

### E.   The Court Denies Plaintiff's Motion for Default as to Defendant Red Bull GmbH

Finally, the Court addresses Plaintiff's motion for entry of default against

Defendant GmbH.  (Dkt. #33).  Plaintiff's motion lacks merit, and while the

Court does not believe that Defendant RBNA can oppose the motion, the Court

can deny the motion without hearing from GmbH.  A review of the docket

makes clear that Plaintiff has not undertaken the necessary preliminary steps;

41

these deficiencies include (i) Plaintiff's failure, under Federal Rule of Civil Procedure 55(a) and Local Rule 55.1, to seek a Certificate of Default from the Clerk of Court, which application would require submission of an affidavit demonstrating "that the pleading to which no response has been made was properly served"; and (ii) Plaintiff's failure to abide by this Court's Individual Rules in moving for default. *See also Priestly* v. *Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011) (setting out "two-step process for obtaining a default judgment").

Moreover, as repeatedly noted, apart from these procedural failures, Plaintiff substantively cannot prove any default by Defendant GmbH, as the docket of this case evinces no effort to serve that Defendant, and the limited appearance of counsel on its behalf does not change this calculus. *See supra* at 20-22; *see also Saunders* v. *Bank of Am.*, No. 12 Civ. 9201 (GBD) (RLE), 2014 WL 1666665, at *1 (S.D.N.Y. Apr. 2, 2014) (denying request for default judgment where the plaintiffs "failed to follow the requirements of service outlined in Rule 4" and the docket did not reflect service upon the defendant), *report and recommendation adopted*, 2014 WL 1667001 (S.D.N.Y. Apr. 25, 2014). Further, as indicated above, "[m]erely making a general appearance before the court" does not amount to waiver of Plaintiff's failure to effect service. *Zherka*, 52 F. Supp. 3d at 577.

Accordingly, given the significant procedural and substantive defects of Plaintiff's motion, the Court sees no viable argument for entering a default judgment against GmbH. Instead, the Court denies Plaintiff's motion and

42

reconfirms that dismissal of this matter is appropriate as to Defendants GmbH and RBDC based on Plaintiff's failure to serve either party with the operative Complaint.

## CONCLUSION

For the reasons set forth in this Opinion, (i) Defendant's motion to strike is GRANTED; (ii) Defendant's motion to dismiss pursuant to Rule 12(b)(6) is GRANTED; (iii) the Complaint is DISMISSED as to Defendants GmbH and RBDC pursuant to Rule 4(m); and (iv) Plaintiff's motion for entry of default against Defendant Red Bull GmbH is DENIED.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      June 29, 2016
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

43